## Case No. 2,988.
### COLES et al. v. MARINE INS. CO.
[3 Wash. C. C. 159.][1]
Circuit Court, D. Pennsylvania. April Term, 1812.

MARINE INSURANCE — MISREPRESENTATION — MATTERS MATERIAL TO THE RISK—DEVIATION—PERILS INSURED AGAINST.

1. If the loss of the vessel arose from the ordinary circumstances of a voyage, or from sea damage or wear and tear, which, without the action of any extraordinary causes, was to be expected, the insurer is not liable. But if it happened in consequence of the violence of the winds and waves, running on rocks or the like, these are perils against which the insurer agrees to indemnify.

2. It is not sufficient for the insured to prove, that there were storms during the voyage, unless he can fairly trace the injury sustained to their influence.

3. What will be deemed a misrepresentation by the assured.

4. It is very certain, that every thing which concerns the state of the vessel, at any particular period of her voyage, is generally considered material to the risk.

5. What will be deemed a deviation from the voyage insured; and under what circumstances a vessel may proceed to a port, out of her direct course; and for what causes she may remain at such port.

In admiralty. Action on a policy on the Brothers, on a voyage from a port on the Brazil coast, to Canton, with liberty to touch or stop at the Pegu islands, or any other islands, ports, or places, the master may think proper, to take and trade for refreshments, sandal wood, skins, birds' nests, or any other articles. Premium 10 per cent., to return 2½ on safe arrival; valued at 10,000 dollars; 9,000 insured; warranted American property. This vessel sailed from the port, in company with a ship called the Hope, belonging to the plaintiffs, under an agreement to keep company during the voyage, which was the same with both. On the 13th of August, 1809, about two months after this vessel had left the port, on the voyage insured, the master, who was also a part owner, wrote to the plaintiffs, by a vessel he met with at sea, that at that time he had met with no misfortunes with his boats, &c.; that he had sailed in company with the Hope as her consort, and that they kept company very well when the weather was good, but when otherwise, she, the Brothers, could not keep way with the Hope. The letter, in other parts, plainly imports, that these vessels were to keep company during the voyage. This letter was shown to the defendants when this insurance was effected, and was by them annexed to the order. It appeared, by the evidence, that this vessel, in her voyage, was exposed to many storms and tempests, in which she suffered considerably, but principally in her sails and rigging. She stopped

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

at the Pegu islands, having previously stopped ten or twelve days at Tomgataboo, waiting for the Hope, from which she had been separated. From the Pegu islands, she went to the Norfolk island, entirely out of the course of the voyage, but, as was proved by the mate, it was the only place at which she could obtain refreshments, of which she stood in need. From Norfolk island she went to Fanning's island, where she remainded three months, for the purpose of repairing the vessel. Thence she went to Guma, where repairs were again necessary; and not being able to repair there, she went to Manilla, where, after a survey ordered by the court at that place, she was sold under an order of the court, it appearing that the costs of repairing her, would amount to nearly as much as she was worth. The objections made to the recovery were—1. That the loss was not occasioned by those perils of the sea, against which underwriters insure, but by the ordinary deterioration of so long a voyage. Marsh. 492, 540, 463. 2. By the captain's protest, made at Manilla, (which was read by consent,) it appeared, that on the 14th of August, the Brothers had met with much stormy weather, by which her sails and rigging were much injured. Of course, the letter of the 13th of August, which was shown to the underwriters, was a misrepresentation, so material as to vitiate the policy. 3. That the vessel had been guilty of a deviation in two respects—1. In waiting at Tomgataboo for the Hope; and—2. In going to Norfolk island, out of the course of her voyage. In waiting three months at Fanning's island; and in going to Manilla to repair, when she might with as much, or more ease, have gone to Canton.

WASHINGTON, Circuit Justice (charging the jury). The loss laid in the declaration, is by a peril of the sea. The cause of the loss forms the only point of your inquiry. If it arose from the ordinary circumstances of such a voyage as this was, as from sea damage, or the wear and tear; which, without the action of any extraordinary cause, was to be expected; the insurer is not liable. But, if it happen in consequence of the violence of the winds and waves, running on rocks, or the like; these are perils against which the insurer agrees to indemnify. It is not sufficient for the insured to prove that there were storms during the voyage, unless he can fairly trace the injury sustained to that cause; for, it may nevertheless appear, that the injury which caused the breaking up of the voyage, arose from the ordinary circumstances of a long voyage, as this was. To obtain satisfaction on this point, it may be well to inquire, what was her real situation when she arrived at Manilla? At New-York, the vessel was valued, with her standing rigging, at 3,500 dollars. At Manilla, she was valued at 2,900 dollars. The repairs neces-

sary to be put upon her at Manilla, were valued at nearly 2,500 dollars; and she sold at 1,250 dollars. Could the repairs necessary upon the ordinary wear and tear of this voyage, about eighteen months, have amounted to the sum above mentioned?—What were these repairs? They embraced the injury done to her coppering, sheathing, sails, and rigging; and it is in evidence, that she was exposed to a number of tempests, and once ran upon a bar, over which she was drawn by the hands. You must decide, from these facts, whether the injury resulted from the ordinary wear and tear attending such a voyage, or from the bad weather, to which it is proved she was exposed.

2. Did the letter of the master and part owner of this vessel, of the 13th of August, amount to such a misrepresentation, as, in point of law, avoids the policy? To avoid a policy on the ground of misrepresentation, the representation must not only be false, but it must be material in relation to the undertaking of the insurer, either as to the rate of premium, or as to his taking the risk at all. See Clason v. Smith [Case No. 2,868]. If the injury stated in the captain's protest, is construed to refer to injuries sustained prior to the 13th of August, when his letter was written, then the statement in that letter was not true. The next question is, was it material? Would an underwriter, acting with reasonable caution, have insured for the same premium, having a knowledge of the fact stated in the protest, as he would upon a view of the letter of the 13th of August, supposing the letter to relate to what had occurred prior to the 13th of August? It is very certain, that every thing which concerns the state of a vessel, at any particular period of her voyage, is generally considered material; and if the master, in his protest, refers to what had happened prior to the 13th of August, it would seem, that he materially misrepresented his situation. On this point, there is some doubt; and the question is left to the jury. Where the materiality of a concealment or misrepresentation is clear, the court feels no reluctance in expressing its opinion on the point.

3. The next point is deviation. It is said, that there was a deviation—1. In waiting for the Hope; and 2. In going out of the course of the voyage—unjustifiable stoppage, and finally, going to Manilla instead of Canton.

1. As to the stopping for the Hope. Any departure from the usual course of a voyage, or stopping at any place, even in the course of the voyage, which is not permitted by the policy, is a deviation which will avoid the policy, unless it took place for some justifiable cause; such as to repair, obtain necessary refreshments, avoid an enemy, or the like. This stoppage is not justified on any of the above grounds. But, though not stated in the policy, it was tacitly allowed, that this vessel might stop a reasonable time in order

·to keep company with the Hope; because the defendants knew when they took the risk, that these vessels had agreed to keep company, (an agreement which it was not then possible to countermand,) and as one sailed much faster than the other, (as the defendants also knew,) it was to be expected that they would separate, and might be obliged to wait for each other. But this could not be understood as exceeding a reasonable time; and therefore, the question of deviation, under this head, must depend upon your opinion, whether the stoppage of the Brothers at Tomgataboo, for twelve or fourteen days, waiting for the Hope, was reasonable or not.

2. As to the departure of this vessel from the ordinary course of the voyage, the rule, as laid down in the case of Winthrop v. Union Ins. Co. [Case No. 17,901], is, that if the termini of the voyage be fixed in the policy, the vessel cannot go out of the usual ·course of the voyage, notwithstanding she is permitted to stop and trade at any ports or places. That is the present case; and no evidence has been offered to show, that in a voyage like the present, it is the usual and established course to go out of the direct course, from one of the termini to the other. Nevertheless, the deviation to Norfolk island will not avoid the policy, if, from the evidence, you think it was necessary for the purpose of obtaining refreshments. Neither will the stay of three months at Fanning's island have this effect, if you are of opinion that the time was employed in necessary repairs to the vessel. But if the vessel could have got from Guma to Canton, in the situation in which she was, we think she was not justified in going to Manilla, merely because, by going to Canton, she must then have ended her voyage, before she had completed her cargo, because she had no right to go out of the usual course of her voyage, for the purpose of trade, or for any other reason than such as would justify a deviation in ordinary cases.

PETERS, District Judge, thought that on such a voyage as this, the vessel was not confined to the direct course of the voyage.

Verdict for plaintiff.